# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JERRY ALVIN KERSEY,

      Petitioner,

v.                                                              No.CIV 97-0694 BB/WWD

RONALD LYTLE,

      Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1.  THIS MATTER comes before this Court upon petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed May 19, 1997.[1] Petitioner is confined pursuant to the judgment, sentence and commitment of the Fifth Judicial District in the District Court of Chaves County for the crimes of first degree murder, kidnaping, conspiracy and tampering with evidence. He is represented in these proceedings by the Federal Public Defender.

    2.  Following a jury trial, Kersey was convicted in December 1992 of first degree murder, kidnaping, conspiracy and tampering with evidence following a jury trial and sentenced to life plus eighteen years imprisonment. His co-defendant, Michael Clark, pleaded guilty prior to trial.

    3.  The government contends that Kersey's claims are either not cognizable under § 2254 or else that the grounds raised in the petition do not allege any facts to rebut the presumption of

---

[1] The Record Proper in this case was received on April 3, 1998 and the Answer Brief was filed on October 5, 1998.

correctness given to the state court findings, and thus should be dismissed.[2]  The government concedes exhaustion for all of petitioner's claims, which address the following:

> (1) whether the evidence was sufficient to sustain Kersey's conviction of kidnaping;
>
> (2) assuming the evidence was sufficient to sustain Kersey's conviction of kidnaping, whether imposition of consecutive sentences for Kersey's kidnaping and felony murder convictions violated his constitutionally guaranteed right against double jeopardy;
>
> (3) whether the evidence was sufficient to sustain Kersey's conviction of first degree murder based on felony murder or deliberate intent murder; and
>
> (4) whether Kersey was denied his Sixth Amendment right to an impartial jury when the trial court excused for cause two jury venire members, both of whom expressed the belief that they could judge the case impartially.

4. These are the basic facts.  Jerry Kersey was recruited by his half-brother, Michael Clark, in the kidnaping of Steven Farley, who was engaged to a girl with whom Clark had known and with whom he wanted to pursue a relationship.  Farley, whose family was in Los Alamos, was living with the Coleman family in Roswell during this time and attending Roswell High School.  In September 1991, after dropping Kersey off at a motel, Clark purchased an ice pick, pliers and a package containing two steak knives from a convenience store.  Kersey bought a pair of handcuffs and a security guard badge.  He then went to the Roswell High School administrative office posing as a police detective who needed to speak with Farley.  He convinced school officials to

---

[2] See Hatch v. Oklahoma, 58 F.3d 1447, 1453 (10th Cir. 1995) (state court's factual findings are presumed correct unless they are not fairly supported by the record).  Kersey's petition was filed after the filing date of the recently enacted amendments to 28 U.S.C. § 2254 contained in the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, tit.I, sec. 104 (to be codified at 28 U.S.C. §§ 2254(d),(e) (April 24, 1996)).  See Lindh v. Murphy, ___ U.S. ___, 117 S.Ct. 2059, 2068 (1997) (new AEDPA provisions generally apply only to cases filed after the Act became effective).

release Farley into his custody, took Farley from the school in handcuffs, frisked him and put him in the back seat of Clark's station wagon.

5. Police were alerted when Ms. Coleman inquired into Farley's disappearance. Also, Farley's mother had received a telephone call demanding a ransom of $50,000 for her son. Clark contacted the police department and agreed to turn himself in. After almost ten hours of interrogation, he agreed to show police where Farley's body was. Clark took the police to a small motel room at the abandoned Cedar Lake Lounge near Artesia where they found Farley's body. Farley had been strangled with an electrical cord and stabbed eleven times with an ice pick.

**Claim One**

6. Kersey presents various theories in support of his contention that the evidence was insufficient for the jury to convict him of kidnaping and specifically, of a showing of the intent required under the kidnaping statute for either "holding for service" or "holding for ransom."[3] Based on a review of the record and the briefs submitted by the parties, I find that all of these theories fail. Kersey essentially asks the Court to reweigh evidence already considered by the jury and to conclude that the evidence could have supported a verdict other than the one decided upon

---

[3] Kidnaping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent:
    (1) that the victim be held for ransom;
    (2) that the victim be held as a hostage or shield and confined against his will;
    (3) that the victim be held to service against the victim's will; or
    (4) to inflict death, physical injury or a sexual offense on the victim.
Whoever commits kidnaping is guilty of a first degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict great bodily harm upon the victim. N.M.Stat.Ann. 1978 § 30-4-1(A) & (B) (Repl.Pamp. 1984).

3

by the jury. See Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir.1996) (court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason").

7. Petitioner's suggested approach is contrary to the Court's proper inquiry when reviewing a sufficiency of evidence claim, which is to ask "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." Lucero v. Kerby et al, 133 F.2d 1299, 1312 (10th Cir. 1998)(emphasis added); Jackson v. Virginia, 443 U.S. 307, 319 (1979).

8. In his statements to the police, Kersey admitted purchasing the handcuffs and a badge, admitted using deception and force to remove Farley from school,[4] and going with Clark to the Cedar Lake Lounge. He admitted using starter fluid as ether to quiet Farley during the ride to the lounge. He also admitted watching Clark stab Farley and to handing Clark an electrical cord and watching Clark use it to strangle Farley around the neck. Kersey stated that it was he who made the ransom call to Farley's mother within a few hours after the killing. Testifying in his own behalf at trial, Kersey said he did not believe Clark intended to kill Farley, but only that he was going to rough him up and then let him go.[5]

9. Kersey claimed that he was simply attempting to "resolve problems" between Clark and Farley, and that the ride to the Cedar Lake Lounge with Farley knocked out and handcuffed was simply a movement which was "incidental" to the murder and not sufficient to support a kidnaping conviction. However, viewing the evidence in the *petitioner's* favor is not the correct

---

[4] According to petitioner in his testimony, school officials never asked to see identification. Tape ("T) 27, log at 43. Because pertinent sections of the trial tapes were reviewed on a different tape recorder, I refer to the tape log instead of tape counter.

[5] These facts are stipulated by the parties and are part of the state record.

4

standard on which to conduct habeas review of a sufficiency claim. Further, the conviction must stand if a rational jury *could* have found that the elements of the crime existed beyond a reasonable doubt. Jackson, 443 U.S. at 319.

10. The jury chose to infer from the facts that Kersey's conduct constituted either "holding for service" or "holding for ransom" against Farley's will. Under New Mexico law, both the "holding for ransom" or "holding for service" bases for conviction could also be stated as: "for the purpose of assisting or benefitting someone or something" or to "accomplish some goal that the perpetrator may view as beneficial to himself or herself." State v. Ortega, 112 N.M. 554 (1991). Thus, as the state supreme court noted, Kersey's actions in taking Farley out of school could be seen as having been done to benefit Clark, i.e., to convince Farley to end his relationship with Jarvis, with whom Clark wished to pursue a relationship. Cmp. Ortega at 557 ("service" identified as convincing the victim to voluntarily drive with defendant to remote location where they would purchase cocaine).

11. I find that the inferences made by the jury, and the conclusion the jury came to based on these inferences, are rational and are based on the direct and circumstantial facts contained in the record. The evidence could support a rational jury's finding that Kersey was guilty of holding Farley either for service or for ransom and are therefore enough for a reasonable jury to have found Kersey guilty beyond a reasonable doubt. See Jackson, 443 U.S. at 319; United States v. Swallow, 511 F.2d 514, 520 (10th Cir.1975)(court looks at both direct and circumstantial evidence in determining whether evidence is sufficient to support the convictions); Stallings v. Tansy, 28 F.3d 1018, 1021 (10th Cir. 1994) (quoting Beachum v. Tansy, 903 F.2d 1321, 1332

5

(10th Cir.), cert. denied, 498 U.S. 904 (1990)(knowledge can be proven by circumstantial evidence).

12. This ground for relief fails for another reason. The New Mexico Supreme Court addressed this claim under both New Mexico law and under Jackson, and made findings which supported the kidnaping conviction. These findings should be given deference in federal habeas proceedings.[6] See Ans. Ex. H. Petitioner offers no "clear and convincing evidence" to rebut the presumption of correctness of the state court findings except to challenge the court's "interpretation" of New Mexico law, based on two New Mexico cases which involve the kidnaping statute. See State v. Vernon, 116 N.M. 737, 740-71 (1983); Ortega, 112 N.M. 554. In attempting to reconcile Kersey's case with existing case law, the New Mexico Supreme Court on appeal found that the facts here were more analogous to Ortega than Vernon.

13. However, claims concerned solely with matters of state law or interpretation of state law fail to state a claim cognizable in federal habeas claims. See Shafer v. Stratton, 906 F.2d 506, 510 (10th Cir.) (rejecting due process claim that sentence was based on "egregious" misinterpretation of state law), cert. denied, 498 U.S. 961 (1990); § 2254(e)(1) (court may grant habeas relief only if decision resulting from that adjudication was contrary to "clearly established *Federal* law") (emphasis supplied).

---

[6] Factual findings from state court proceedings are presumed correct unless rebutted by clear and convincing evidence. State determinations of legal questions or mixed questions of fact and law are now also given deference  A federal court may grant habeas relief if, and only if, the "decision" resulting from that adjudication was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or involved an "unreasonable application of" law, or an "unreasonable determination of the facts in light of the evidence" presented at the state level. 28 U.S.C. § 2254(e)(1).

14. Petitioner further suggests that one of the alternative bases for the kidnaping was legally inadequate, and that under State v. Olguin, 120 N.M. 740 (1995), the general kidnaping verdict must be reversed. I find no merit to this theory. Petitioner argues that the legal inadequacy stems from Vernon's holding, which rejected notions that movement which is incidental to a murder, or that resolution of a problem between perpetrator and victim can satisfy the element of "held for service" under the kidnaping statute.

15. I fail to see how Vernon's holding resulted in a legal inadequacy for either of the alternative bases ("holding for service" and "holding for ransom") for conviction under New Mexico's kidnaping statute. The fact that the New Mexico Supreme Court viewed the facts in the present case as more analogous to Ortega than Vernon does not render the jury's interpretation of the facts to be legally inadequate. Petitioner does not claim error in the law set out in any of the jury instructions, but rather error in the inferences made from the facts.

16. Thus, the legal standard under which the jury was instructed and under which the prosecution presented its evidence was correct. United States v. Wacker, 72 F.3d 1453, 1465 (10th Cir. 1995) (reversing conviction because the legal standard under which the jury was instructed was incorrect);[7] see also United States v. Pace, 981 F.2d 1123, 1130 (10th Cir. 1992)(citing and quoting Griffin v. United States, 502 U.S. 46, 59 (1991)(when defendant is charged in the disjunctive and one charge is unsupported by any evidence whatsoever, a

---

[7] Olguin also emphasizes the distinction between legal and factual inadequacy. 120 N.M. at 740 ("due process does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction").

conviction may be affirmed on the assumption that the jury rejected the "factually insufficient theory" and convicted on the alternative ground for which the evidence was sufficient).[8]

17. Accordingly, I find that there was sufficient evidence to have supported a rational jury's verdict of kidnapping under New Mexico's kidnapping statute under either the "ransom" or "service" alternative. Relief should be denied on this ground.

**Claim Two**

18. Plaintiff next alleges that, assuming that the evidence is sufficient to sustain Kersey's conviction of kidnapping, the imposition of consecutive sentences for Kersey's kidnapping and felony murder convictions violated his constitutionally guaranteed right against double jeopardy because the conduct underlying the convictions was unitary. The multiple punishment prohibition under the Double Jeopardy Clause extends not just to cumulative sentences for the same offense, but multiple convictions for the same offense as well. See State v. Pierce, 110 N.M. 76, 86-87 (1990) (where the legislature has not authorized multiple punishments for the same offense, the state may charge separate offenses, but the convictions cannot stand).

19. Under the traditional double jeopardy test set forth in Blockburger v. United States, 284 U.S. 299 (1932), "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only

---

[8] Pace's recent abrogation by Edwards v. U.S., ___ U.S. ___, 118 S.Ct. 1475 (1998) does not apply here, where a conviction under either ground has no effect on sentencing. See U.S. v. Bell, 1998 WL 563536, (to be reported at 154 F.3d 1203) (Sept. 4, 1998) (holding that, even though possibility existed that the jury found defendant guilty only of conspiracy to distribute cocaine powder, no plain error existed in light of overwhelming evidence that supported conviction on charge of conspiracy to distribute crack cocaine). Also, Pace had not been decided, either at the time of Kersey's trial court decision or at the time his conviction became final, so that the validity of the conviction on either ground was not contrary to "clearly established" U.S. Supreme Court law.

one, is whether each requires proof of a fact which the other does not. Thomas v. Kerby, 44 F.3d 884, 887 (10th Cir. 1995); see also Lucero v. Kerby, 133 F.3d 1299, 1316 (10th Cir. 1998). However, in determining whether a defendant's conduct constitutes a single criminal offense or separate criminal offenses for double jeopardy purposes, deference is given to the state court's interpretation of the relevant statutory provisions. Lucero at 1316; see also Whalen v. United States, 445 U.S. 684, 692 (1980) (legislative intent guides analysis on multiple punishments under double jeopardy).

20. Under New Mexico law which applies to Kersey's case, the court is required to conduct a two-part test for determining legislative intent as to multiple punishment. Swafford at 13; State v. Contreras, 120 N.M. 486, 489 (1995):

> First, the court must inquire as to "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." If the conduct is non-unitary, then multiple punishments would not violate the Double Jeopardy Clause. If the conduct is unitary, the court must then proceed to the second prong of the test, which "asks whether the legislature intended multiple punishment for unitary conduct."

Lucero at 1316 (citing Swafford at 1233-34). The inquiry never gets to the second part if the court finds that the conduct is unitary. See Lucero at 1317; Swafford, 112 N.M. at 13.

21. Conduct is separate and distinct and not unitary if "events are sufficiently separated by either time or space," Swafford, 112 N.M. at 13; Contreras, 120 N.M. at 489, or "the quality and nature of the acts or ... the objects and results involved" are distinguishable. Swafford at 14. Other factors are also considered in determining whether conduct constitutes separate acts or "merely distinct parts of one offense," such as the similarity of the acts performed, whether the conduct occurred at the same location and defendant's intent. See Herron v. State, 111 N.M. 357, 361 (1991).

9

22. The threshold question, then, is whether the evidence supports a finding that Kersey's conduct was unitary. See State v. Mora, Vol. 37, No. 1, SBB 8, 17 (N.M.S.Ct. Jan. 1, 1998) (resolution of unitary conduct analysis turned on which version of events was best supported by the evidence). In this case, the elements of Farley's kidnapping were complete when Kersey took Farley unlawfully and forcefully from the high school. The strangulation and stabbing took place two hours later, almost sixty miles away from the scene of the kidnapping. The acts specific to Farley's kidnapping and his murder were distinct and different. The uncontroverted evidence supports a finding that Petitioner's conduct related to Farley's kidnapping and murder was not unitary. Cmp. Lucero, 133 F.3d at 1320 (citing to cases which found that the predicate offense is complete as soon as the requisite elements have occurred, e.g. State v. Livernois, 123 N.M. 128, 134 (1997) (aggravating burglary offense was complete when, armed with a deadly weapon and with requisite intent, defendant entered building).

23. The state Supreme Court made similar findings on direct appeal. As with Petitioner's first alleged ground for relief, its was not contrary to clearly established Federal law,[9] nor was it an unreasonable determination of the facts in light of the evidence presented at the state level. See Ans., Ex. H. The state court findings are therefore presumed correct unless rebutted by clear and convincing evidence, which Petitioner has failed to do.

24. Petitioner's arguments based on Contreras are not useful. Contreras' holding that one cannot be convicted of and sentenced for both felony murder and the underlying felony applies only to conduct which has first been determined to be unitary. See Contreras, 120 N.M. at 490-91. Petitioner supplies his own interpretation of Contreras, stating that the Contreras court

---

[9] As stated above, federal law on this issue rests on state law regarding legislative intent.

"transcended" the unitary conduct analysis and that conduct is "necessarily unitary" where conduct underlying one offense is the predicate to another offense. Mem. Brf. at 21. Pet. Brf. at 20-21.

25. This interpretation is unfounded and contradictory to the court's analysis, because Contreras did conduct the traditional unitary conduct analysis. The New Mexico Supreme Court in Contreras concluded that the defendant's conduct *was* unitary where, almost immediately after stabbing the cab driver, he took the cab and its contents (no separation of time and place). In fact, Contreras notes that because the Double Jeopardy Clause does not prohibit imposition of multiple punishments for "discrete acts violative of the same statute," the reviewing court moves to the second part of the inquiry only "if it reasonably can be said that the conduct is unitary. . .". 120 N.M. at 489 (citing (Swafford, 112 N.M. at 14).[10]

26. Because Kersey's conduct was not unitary, I need not address Petitioner's contention that Contreras' holding applies to this case.[11] For the reasons given above, I find that double jeopardy does not apply to punishments Kersey received for the offenses of kidnapping and felony murder, and relief should be denied on this ground.

---

[10] In addition to the language in Contreras, subsequent cases indicate that Contreras did not do away with the unitary conduct analysis. See e.g., Livernois, 123 N.M. at 134 (holding that conduct underlying felony murder and predicate felony of aggravated burglary was not unitary where defendant entered building with intent to commit theft, but subsequently committed murder, thus not violating double jeopardy). Livernois cites to Kersey's case for the proposition that if the Court "find[s] the conduct is not unitary, then we need not proceed to the second prong" determining legislative intent). 123 N.M at 134.

[11] The holding in Conteras is limited to cases in which convictions and sentences for first-degree felony murder and the predicate felony were not final when that case was decided on August 16, 1995. Kersey's direct appeal was decided two days later, but motions for rehearing were denied in both cases on September 22, 1995.

**Claim Three**

27. Petitioner claims that the evidence was insufficient to sustain Kersey's conviction of first degree murder based on felony murder or deliberate intent murder. A felony-murder conviction requires proof that the defendant intended to kill, was knowingly heedless that death might result from his conduct, or knew that his conduct created a strong probability of death or great bodily harm. State v. Duffy, Vol. 37, No. 25, SBB 12, 14 (N.M. S.Ct. Jun. 18, 1998) (citing Ortega, 112 N.M. at 563). In other words, the required intent is comparable to what is required for second degree murder if no felony were involved.

28. Kersey stated at trial that he subdued Farley for the ride to the lounge by administering starter fluid as a kind of ether. He stated that he initially stood guard outside the lounge. He further testified that he saw Clark stab Farley, who was handcuffed with hands in front, once in the back and numerous times in the chest. He said that Clark stopped when Kersey got beside him and said "what are you doing?" Kersey then "turned around and walked out," followed by Clark. Kersey stated that he handed Clark the electrical cord and then followed Clark back into the room, but that by the time he got back into the room ("maybe three seconds" after), Clark had already wrapped it around Farley's neck. T.17 (log at 29, 30); T. 27 (log at 43).

29. Kersey maintains that he never believed that Farley would be seriously harmed and that he never believed that Clark intended to kill Farley. However, the jury was entitled to weigh Kersey's statements for credibility. State v. Lucero, 116 N.M. 450, 454 (1993)(determination of any credibility issues which are generally reserved for the fact-finder and not the court); Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (court must accept jury's resolution of the evidence as long as it is within the bounds of reason).

30. The correct analysis rests on whether the evidence could have supported a rational jury's finding of guilt beyond a reasonable doubt for either deliberate intent murder or the lesser degree of intent required for felony murder. See Jackson, 443 U.S. at 319. I agree with the government that the jury could have viewed Kersey's conduct as a form of assisting Clark in Farley's killing or in the very least, could have imputed to Kersey a knowledge that his actions created a strong probability of death or great bodily harm.

31. I find that the record contains substantial evidence which raises more than a mere suspicion of guilt. See Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir.), cert. denied, 498 U.S. 904 (1990)(evidence supporting conviction must be substantial; *i.e.*, it must do more than raise a mere suspicion of guilt). Sufficient evidence did exist with regard to Kersey's conviction of first degree murder based on felony murder or deliberate intent murder. Relief on this ground should also be denied.

**Claim Four**

32. Last, Petitioner claims that he was denied his Sixth Amendment right to an impartial jury when the trial court excused for cause two jury venire members, both of whom expressed the belief that they could decide the case impartially. One juror (Irene Mendoza) was disqualified because she had relatives on the jury, another relative had been the victim of a murder, and still another relative in the New Mexico State Penitentiary. The second juror (Paul Rogers) was stricken on the basis that he had been arrested for assault with a deadly weapon, later reduced to a misdemeanor.[12]

---

[12] Because he does not consider the two strikes as valid strikes for cause, Petitioner contends that the trial court essentially gave the prosecution two additional peremptory challenges and therefore assumes that case law addressing peremptory challenges governs. I make no such

13

33. Due process does not give a defendant a right to a particular juror, but rather only to an impartial jury. Burton v. Johnson, 948 F.2d 1150 (10th Cir. 1991) (right to trial by impartial jury is fundamental concept of due process); U.S.C.A. Const.Amends. 5, 14. The trial court has a great deal of discretion in dismissing a juror for cause and on appeal its decision will not be disturbed absent manifest error or clear abuse of discretion. United States v. Ramos, 861 F.2d 461, 466 (6th Cir.1988); State v. Padilla, 91 N.M. 451, 453 (Ct.App.1978).

34. Abuse of discretion does not exist by simple virtue of the fact that these two jurors stated that they could decide the case impartially. The critical question is whether Petitioner was denied fundamental fairness of process. I find that he was not, nor has Petitioner shown any unfairness which tinged his criminal trial as a result of the two strikes. Further, even if Petitioner were able to establish either error or clear abuse, he has shown no prejudice as a result. See Fuson v. State, 105 N.M. 632 (1987)(complaining party alleges that he or she was prejudiced by the trial court's error). Thus, relief should be denied on this last ground.

## Recommendation

I recommend that the petitioner's application for Writ of Habeas Corpus be denied and that this cause be dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE

---

assumption.